UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILSON GOFFNER, SR.

               Plaintiff

VERSUS

ANCO INSULATIONS, INC.; ARROWOOD INDEMNITY COMPANY, f/k/a ROYAL INDEMNITY COMPANY, as successor-in-interest to QUEENS INSURANCE COMPANY OF AMERICA and to ROYAL INSURANCE COMPANY OF AMERICA; CBS CORPORATION (f/k/a VIACOM, INC. successor by merger with CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION); EAGLE, INC., f/k/a Eagle Asbestos & Packing Co., Inc.; GOULDS PUMPS LLC; GRINNELL CORPORATION; HOPEMAN BROTHERS, INC.; INTERNATIONAL PAPER COMPANY (individually and as successor by merger with CHAMPION INTERNATIONAL CORPORATION, successor by merger with UNITED STATES PLYWOOD CORPORATION); LAMORAK INSURANCE COMPANY, f/k/a OneBeacon Insurance Company, f/k/a Commercial Union Insurance Company, as the Liability Insurer of EAGLE, INC., f/k/a Eagle Asbestos & Packing Co., Inc., f/k/a Eagle Packing & Equipment Co., Inc.; LIBERTY MUTUAL INSURANCE COMPANY as the insurer of WAYNE MANUFACTURING COMPANY; McCARTY CORPORATION; TAYLOR-SEIDENBACH, INC.; TRAVELERS INDEMNITY COMPANY, as successor-in-interest to QUEENS INSURANCE COMPANY OF AMERICA and to ROYAL INSURANCE COMPANY OF AMERICA (as insurer for Anco Insulations, Inc.); ZURICH AMERICAN INSURANCE COMPANY (as insurer for ANCO INSULATIONS, INC.) ZURICH AMERICAN INSURANCE COMPANY, as

CIVIL ACTION NO. _____

SECTION: _____

JUDGE: _____

successor-by-merger to Maryland Casualty Company, as the insurer of MARQUETTE INSULATION, INC.; AVONDALE INDUSTRIES, INC. f/k/a NORTHROP GRUMMAN SHIP SYSTEMS, INC. n/k/a HUNTINGTON INGALLS INCORPORATED; ALBERT L. BOSSIER, JR., as an Executive Officer of Avondale Industries, Inc.; JOHN DAVID "J.D." ROBERTS, as an Executive Officer of Avondale Industries, Inc.; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, as the liability insurers of the Following Executive Officers of Avondale Industries, Inc.; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, as the Liability Insurer of Trinity Industries, Inc., as insurer to Gretna Machine & Iron Works, Inc. and executive officers of Gretna Machine & Iron Works, Inc.; CONTINENTAL INSURANCE COMPANY, as the Liability Insurer of Trinity Industries, Inc., as insurer to Gretna Machine & Iron Works, Inc. and executive officers of Gretna Machine & Iron Works, Inc.; EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN (Wausau Insurance Company), as the Liability Insurer of Trinity Industries, Inc. as insurer to Gretna Machine & Iron Works, Inc. and executive

officers of Gretna Machine & Iron Works, Inc.; HARTFORD ACCIDENT AND INDEMNITY COMPANY, as insurer to Gretna Machine & Iron Works, Inc. and executive officers of Gretna Machine & Iron Works, Inc.; LAMORAK INSURANCE COMPANY, f/k/a OneBeacon Insurance Company, f/k/a Commercial Union Insurance Company, as the Liability Insurers of the Following Executive Officers of Avondale Industries, Inc.; THE TRAVELERS INDEMNITY COMPANY, f/k/a OneBeacon Insurance Company, f/k/a Commercial Union Insurance Company, as the Liability Insurers of the Following Executive Officers of Avondale Industries, Inc.; THE TRAVELERS INDEMNITY COMPANY, a non-Louisiana foreign insurer

registered to do or doing business in the State of Louisiana, as the Liability Insurer of Trinity Industries, Inc., as insurer to Gretna Machine & Iron Works, Inc. and executive officers of Gretna Machine & Iron Works, Inc.; TRINITY INDUSTRIES, INC., individually and as successor-in- interest to GRETNA MACHINE & IRON WORKS, INC., and the Executive Officers of GRETNA MACHINE & IRON WORKS, INC.

Defendants

*************************************************************************************

## NOTICE OF REMOVAL

NOW INTO COURT, through undersigned counsel, comes defendant, Huntington Ingalls Incorporated (f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc.) (hereinafter, "Avondale"), who, pursuant to 28 U.S.C. §§ 1441, 1442, and 1446, notices the removal of the above-entitled action bearing No. 2021-01485 on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana (the "State Case"), to the United States District Court for the Eastern District of Louisiana.  This Court has subject matter jurisdiction under 28 U.S.C. § 1441 in that the action arises "under the Constitution, laws or treaties of the United States" within the meaning of that statute, and because Avondale was, at all material times, acting under an officer of the United States as set forth in 28 U.S.C. § 1442(a)(1).  The grounds for removal are as follows:

1.

Venue is proper in this Court because it is the district court for the district in which the State Case is pending.  28 U.S.C. § 1442(a).

2.

On February 18, 2021, Plaintiff, Wilson Goffner, Sr., filed a Petition for Damages naming

Avondale as a defendant.[1]  The Petition alleges that Plaintiff was diagnosed with "malignant lung

cancer" as a result of occupational exposures to asbestos at Avondale and other locations from

1969 to the late 1970s.[2]  Plaintiff alleges he was exposed to asbestos-containing products when he

"used, handled, and/or was in the vicinity of others using or handling asbestos or asbestos-

containing products at various locations."[3]  Although the Petition for Damages makes broad

allegations of exposure to asbestos attributable to Avondale, it does not specifically link Plaintiff's

alleged exposures to any vessels that Avondale built, refurbished, or repaired for the United States

government.

3.

On July 20, 2022, Plaintiff gave a deposition and testified that he worked at Avondale as a

tacker and "burner" beginning in 1975.[4]  He testified that, while he worked at Avondale, he worked

aboard many "government" and "military" vessels, including those built for the United States

Navy.[5]  He specifically testified that when he worked at the Avondale Main Yard in the 1970s,

that it was "mostly government jobs" and that "that's all there was" at the time.[6]  He further recalled

working aboard a government vessel called the "IOWA" performing repairs.[7]  Moreover, he

recalled Navy personnel onboard the vessels he worked aboard at Avondale.[8]  He testified that he

worked around a variety of crafts on these vessels, which frequently included crafts using asbestos

---

[1] Exhibit A, Petition for Damages.
[2] *Id.* at ¶ 9.
[3] *Id.*
[4] Exhibit B, Deposition of Wilson Goffner, taken on July 20, 2022, p. 75.
[5] *Id.* at pp. 78-81.
[6] *Id.*
[7] *Id.* at p. 81.
[8] *Id.* at pp. 186-87.

and asbestos-containing products.[9]  He specifically recalled working around Hopeman Brothers'

employees performing joiner work on the vessels he worked aboard, including the "government"

vessels.[10]

4.

During Plaintiff's alleged exposure period from Avondale, 1969 through the late 1970s,

Avondale constructed 136 vessels, 70 of which were pursuant to contracts with the federal

government, approximately 51%.  More specifically, Avondale was constructing vessels for the

federal government pursuant to contracts with the United States Navy, United States Coast Guard,

and the United States Maritime Administration ("MARAD").  The government vessels constructed

during Plaintiff's alleged exposure period included U.S. Navy Destroyer Escorts, U.S. Coast Guard

Cutters, and LASH and States lines cargo vessels for MARAD (collectively, the "Federal

Vessels").   The Federal Vessels were built with asbestos-containing products and materials

pursuant to the Navy, Coast Guard, and MARAD's requirements.  Thus, to the extent Plaintiff is

alleging exposure from asbestos-containing materials at Avondale, such exposure is necessarily

attributable to asbestos-containing materials required and destined for use in the construction of

the Federal Vessels.

5.

Plaintiff's deposition testimony revealed, for the first time, that Plaintiff is claiming

exposure at Avondale attributable, at least in part, to asbestos required and destined for use on U.S.

Navy, U.S. Coast Guard, and MARAD vessels pursuant to Avondale's contracts with the United

States government.

---

[9] *Id.* at p. 85
[10] *Id.* at pp. 33-34, 86-88.

6.

This removal is being filed within thirty days of receipt of Plaintiff's deposition transcript on August 2, 2022, and is, therefore, timely under 28 U.S.C. § 1446.

7.

This action involves persons acting under the authority of an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1).  To establish jurisdiction under this statute, a defendant must show: (1) it has asserted a colorable federal defense, (2) it is a "person" within the meaning of the statute, (3) it has acted pursuant to a federal officer's directions, and (4) the charged conduct is related to an act pursuant to a federal officer's directions.  *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (*en banc*).

8.

Avondale is a "person" within the meaning of 28 U.S.C. § 1442(a)(1).  *E.g., Savoie v. Huntington Ingalls Incorporated,* 817 F.3d 457, 461 (5th Cir. 2016).

9.

Avondale was "acting under" an "officer … of the United States or [an] agency thereof" within the meaning of § 1442(a)(1) when it built the Destroyer Escorts and Coast Guard Cutters pursuant to contracts with the U.S. Navy and U.S. Coast Guard because the federal government contracted with Avondale to perform a task that the government otherwise would have had to perform by itself—namely, to build ships "used to help conduct a war" and to further other national interests.  *E.g.*, *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153-54 (2007); *Savoie,* 817 F.3d at 461-62 (Avondale was acting under a federal officer in the construction of vessels for the United States Navy); *Cortez v. Lamorak Ins. Co.*, No. CV 20-2389, 2020 WL 6867250, at *5

(E.D. La. Nov. 23, 2020) (Avondale was acting under a federal officer in the construction of vessels for the United States Coast Guard).

10.

Avondale was also "acting under" a federal officer within the meaning of § 1442(a)(1) when it built the LASH and States lines cargo vessels pursuant to contracts with MARAD, because the United States government, acting through MARAD, had contracted with Avondale to perform a task that the government otherwise would itself have had to perform – to build ships for use as naval and military auxiliaries, to promote foreign and domestic commerce, and to further other important national interests. *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 713 (5th Cir. 2015) (Avondale was acting under a federal officer in the construction of vessels for the United States Maritime Administration); *Dempster v. Lamorak Ins. Co.*, No. CV 20-95, 2020 WL 468611, at *11 (E.D. La. Jan. 28, 2020) (same).

11.

If Plaintiff was exposed to asbestos from work undertaken in conjunction with the construction of the Federal Vessels at Avondale's shipyard, the use of asbestos-containing materials on those vessels was required, controlled, and/or authorized by officers of the United States.

12.

Plaintiff's claims against Avondale are claims "for or related to" acts performed under color of federal office within the meaning of the text of 28 U.S.C. § 1442(a)(1) because the charged conduct is "connected or associated with" an act under a federal officer's direction. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d at 296.

13.

The use and installation of asbestos-containing materials in the construction of the Federal Vessels was required by the contractual provisions and design specifications mandated by the federal government acting through the U.S. Navy, U.S. Coast Guard, and MARAD.

14.

The materials used in the construction of the Federal Vessels—including asbestos-containing materials—were the kind, type, and brand of materials specifically mandated by the Vessel Construction Contracts between Avondale and the United States government, and by the incorporated drawings, plans and specifications for the construction of the Federal Vessels.

15.

The shipbuilding process—specifically including the use and installation of asbestos-containing materials aboard the Federal Vessels—was supervised and monitored by inspectors and other representatives of the United States government to ensure that Avondale complied with the design specifications mandated by the U.S. Navy, U.S. Coast Guard, and MARAD.

16.

The inspections by representatives of the United States government included a determination that the supplies (including raw materials, components, and end products) used in the construction of the Federal Vessels were the supplies required by the contracts and specifications, including asbestos-containing thermal insulation and other asbestos-containing materials, as well as non-asbestos insulation materials. Inspections occurred throughout construction and prior to final acceptance of the Federal Vessels.  If Avondale did not use the supplies required by the contracts, including asbestos-containing materials, the federal government

could demand that Avondale replace the supplies with conforming materials and/or put Avondale in default of the contract.

17.

The United States government required Avondale to provide representatives of the United States government, including government inspectors, with office space and other attendant facilities within the shipyard.

18.

Extensive Dock Trials, Builder's Trials, and Sea Trials on the Federal Vessels were performed by representatives of the United Sates government prior to the delivery of each Federal Vessel to ensure conformity with the design specifications mandated by the United States government.

19.

The United States government also promulgated specific safety rules, regulations and requirements for shipbuilding. These regulations included specific permissible safe exposure levels for asbestos pursuant to the Occupational Health and Safety Act and the U.S. Department of Labor Safety and Health Regulations for Shipbuilding, 29 C.F.R. § 1502.1, which set safety standards to meet the provisions of the Longshore and Harbor Workers' Compensation Act requirements to render Avondale's workplace safe pursuant to 33 U.S.C. § 941. Avondale was guided by and required to comply with these safety regulations during the Federal Vessels' construction. United States government safety inspectors specifically monitored and enforced these safety regulations as well as the construction of the Federal Vessels on a day-to-day and job-specific basis.

20.

Avondale raises two colorable federal defenses to one or more of the Plaintiff's claims in this action.  First, one or more of Plaintiff's claims are barred under the jurisprudential doctrine of government contractor immunity established by *Boyle v. United Techs. Corp.,* 487 U.S. 500 (1988), and its progeny.  *Latiolais,* 951 F.3d at 297-98 (holding Avondale's *Boyle* defense is colorable).  Furthermore, Plaintiff's negligence claims relate to the acts performed under color of federal office.

21.

The reasonably precise design specifications established by the U.S. Navy, U.S. Coast Guard, and MARAD mandated the installation of asbestos and asbestos-containing products on the Federal Vessels.  The Federal Vessels confirmed to the specifications mandated by the U.S. Navy, U.S. Coast Guard, and MARAD—the specifications mandated the use of asbestos, and Avondale built the Federal Vessels using asbestos.  The United States government had knowledge of the potential hazards of asbestos-containing materials in the workplace that was equal to or superior to that of Avondale.

22.

Second, Plaintiff's claims against Avondale are barred by the federal defense of derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), and its progeny.  *Yearsley* established that a federal government contractor, performing at the direction and authorization of a federal government officer, is immune from suit based upon performance of the contract.  The *Yearsley* doctrine applies here, rendering Avondale immune from suit, because Avondale performed the at-issue acts at the direction of federal government officers acting pursuant to federal government authorization.

23.

Removal under 28 U.S.C. § 1442 does not require the consent of any defendant.  *See Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014); *Ely Valley Mines, Inc. v. Hartford Acc. and Indemnity Co.,* 644 F.2d 1310 (9th Cir. 1981); *Bottos v. Avakian,* 477 F. Supp. 610 (N.D. Ind. 1979), *aff'd*, 723 F.2d 913 (7th Cir. 1983).

24.

Because this Court has federal officer jurisdiction over at least one claim asserted by Plaintiff, it has supplemental jurisdiction over the entire action.  *Savoie,* 817 F.3d at 463; 28 U.S.C. § 1367(a).

25.

With this Notice, Avondale is filing a "copy of all process, pleadings, and orders served upon" it in the State Case.  28 U.S.C. §§ 1446(a), (d).  In addition, written notice is being given to all adverse parties, and a copy of this Notice is being filed with the Clerk of the Civil District Court for the Parish of Orleans, State of Louisiana.

ACCORDINGLY, Avondale hereby gives notice that the proceeding bearing Case No. 2021-01485 on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, is removed to the docket of this Court for trial and determination as provided by law, and asks that this Court enter such orders and issue such process as may be proper to bring before it copies of all records and proceedings in the State Case, and to proceed with this civil action as a matter properly removed.

**CERTIFICATE OF SERVICE**

I hereby certify by my signature that a copy of the foregoing pleading has been filed with the Clerk of Court using the CM/ECF system on August 30, 2022.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Respectfully submitted,

*/s/ Erin H. Boyd*

_____

Brian C. Bossier (#16818) **T.A.**
Edwin A. Ellinghausen, III (#1347)
Christopher T. Grace, III (#26901)
Erin H. Boyd (#20121)
Laura M. Gillen (#35142)
Whitney C. Stewart (#38905)
**BLUE WILLIAMS, L.L.C.**
3421 N. Causeway Blvd., Suite 900
Metairie, LA 70002
Phone: (504) 831-4091
Fax: (504) 837-1182
Email: eboyd@bluewilliams.com
avondaleasbestos@bluewilliams.com
*Counsel for Huntington Ingalls Incorporated*